INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 02-00018

NOT FOR PUBLICATION

NO. 04-5519

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
NOV 18 2005
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MICHAEL EDWARD SMITH,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

3:02-00018

_____/

BEFORE: KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

SUHRHEINRICH, J., Defendant-Appellant Michael Edward Smith appeals the order of the district court sentencing him to a term of imprisonment of 121 months and a term of supervised release of three years. For the reasons that follow, we **VACATE** the sentence and **REMAND** for resentencing.

I.

On January 4, 2002, shortly after noon, a citizen driving his vehicle in Nashville, Tennessee noticed another vehicle stopped near the median, forcing others to maneuver around it. The vehicle was in front of the Sherith Israel Congregation, a Jewish synagogue that contained a preschool. Finding the situation "strange," the citizen looked more closely and observed what appeared to be a M-16 rifle pointed out of the driver-side window. Smith, the man holding the rifle, saw the citizen looking at him and began trailing him. The citizen noticed that Smith was following him and did a U-turn. The citizen spotted a uniformed Metro Nashville Police Department ("MNPD") officer

across the street. Smith abandoned chase and turned left. The citizen wrote down Smith's license plate number, went across the street, and reported the incident to the police officer.

When Smith pulled into his apartment complex parking lot, he found police officers already waiting for him. Smith ignored their attempts to stop him, instead leading them on a car chase. During the chase, Smith intermittently held a gun to his head and drove into oncoming traffic. He then proceeded to head south along I-65. At one point, Smith pulled over to the side of the road and exited his car. Due to the perceived danger and lack of backup, however, the officers were unable to get close enough to apprehend him. Eventually, Smith got back into his car and continued down the interstate. By this time, the pursuing officers were joined by backup, who took over primary position in the chase. Smith then exited the interstate, pulled into a parking lot, and surrendered to police.

A search of the car turned up the following: a loaded Colt AR-15 rifle with attached scope, two AR-15 magazines with a total of forty-seven rounds of ammunition, a loaded 9mm Glock 17 semi-automatic pistol, two loaded 9mm magazines with ten rounds each, a pair of binoculars, a range finder, an ASP police-type baton, a sand bag, and a rebel flag.

Smith's wife, Leslie Dawn Smith, consented to a search of the Smiths' apartment, which contained the following: 10 fully functional, reassembled hand grenades; one reassembled hand grenade that lacked propellant powder; a Maadi Griffin .50 caliber rifle; a Sig Sauer P226, 9mm semi-automatic pistol; 2082 rounds of assorted ammunition; blasting caps; nine military smoke grenades; a military fuse ignitor; fifty binary explosives; four CS tear gas grenades; two smoke grenades; two phosphorus flares; body armor; a military Kevlar helmet; a Mossberg 12-gauge shotgun; boxes of military blasting caps and time fuse; military training manuals; videotapes

Case 3:02-cr-00018   Document 64   Filed 11/28/05   Page 2 of 8 PageID #: 2

regarding bombs and explosives; and books that included *The Turner Diaries*; *Hunter*; *The Testing of Negro Intelligence*; *Auschwitz*; *The Zionist Connection II*; *American Terrorist*; *Chemistry of Powder and Explosives*; and *Advanced Anarchist Arsenal*.

Smith consented to a search of a storage unit rented in his name. Inside, police found thirteen pipe bombs; aluminum powder; four electrical blasting M4 assembly caps; demolition charge tape; electric matches; safety fuse; assorted chemicals; hobby fuse; mercury; smoke grenades; military signal flares; black powder; smokeless powder; ten bottles of nitro methane; one Light Anti-Tank Weapons Systems (LAWS) rocket tube containing three smoke grenades; topographical maps; and 10,333 rounds of assorted ammunition.

Smith also revealed to MNPD detectives that he had a separate explosives and ordnance cache buried in rural Maury County. The detectives escorted Smith to the area Smith described. There, they met agents from the former Bureau of Alcohol, Tobacco, and Firearms ("ATF"). Smith identified five separate locations where he had buried the items. A subsequent search unearthed the following: two re-manufactured hand grenades; two gym-type bags containing an estimated twenty pounds of potassium perchlorate and twenty pounds of aluminum flash powder; seven military illumination flares; twelve military smoke grenades; fifteen commercial blasting caps; five rolls of military time fuse; a can marked "multi-purpose poring device demo"; one small package containing an unknown number of military blasting caps; eight cans of military grenade hand smoke; 960 rounds of .223 caliber ammunition; forty-four rounds of armor-piercing, 9mm ammunition; and nineteen M-16/AR-15 magazines.

Investigators also recovered from Smith's father-in-law five long firearms belonging to Smith. A search of the ATF National Firearms Registration revealed that Smith had not registered

any of the firearms or explosive devices.

Additionally, Smith admitted his role in transporting firearms from Oklahoma to Tennessee. He also gave federal investigators information about Jack Ray Spores of Midwest City, Oklahoma regarding Spores' possession and manufacture of explosive devices. Based on this information, Spores was later convicted of possession of unregistered firearms.

Smith has admitted his membership in the National Alliance, a neo-Nazi, white supremacy group. Smith's wife told police that Smith has a hatred for Jews, which is consistent with communications discovered by law enforcement[1] and Smith's own admissions.

On February 6, 2002, a federal grand jury indicted Smith on four counts. Count One charged Smith with possession of a firearm in a school zone, in violation of 18 U.S.C. §§ 922(q), 924(a). Count Two charged possession of unregistered firearms, in violation of 26 U.S.C. § 5861(d). Count Three charged unlawful manufacture of a firearm, in violation of 26 U.S.C. § 5861(f). Count Four charged transporting unregistered firearms, in violation of 26 U.S.C. § 5861(j).

Smith pleaded guilty to all four counts without a plea agreement. At sentencing, the district court found an offense level of 13 for Count One, which included the base offense level plus enhancements for a hate crime and reckless endangerment during flight.[2] Counts Two, Three, and

---

[1] For example, the district court found "particularly virulent" the following statement from an e-mail Smith sent a few days before the incident at the Sherith Israel Congregation: "If the Jews don't like what ET has to say, perhaps they should be stuffed head first into an oven."

[2] The most recently enacted version of the Sentencing Guidelines applies unless doing so would violate the Ex Post Facto Clause, U.S. Const. Art. I, § 9, cl. 3. U.S. Sentencing Guidelines Manual § 1B1.11 (2003) [hereinafter "U.S.S.G."]. The Presentence Investigation Report ("PSR") applied the 2002 edition of the Sentencing Guidelines, the edition in effect at the time the PSR was written. However, by the time of sentencing, the 2003 edition was enacted. The district court adopted the PSR with few exceptions, but did not state which version it was applying. Because it was the most recently enacted version, we will assume that the district court applied the 2003

Four had an offense level of 25. This took into account not only the base offense levels, but also the number and nature of the firearms; a finding that the firearms were possessed with knowledge, intent, or reason to believe they would be used in furtherance of another felony; and Smith's acceptance of responsibility and aid in prosecuting Spores. Smith was found to be in Criminal History Category I.

The Guidelines required the court to group the multiple counts. *See* U.S.S.G. § 3D1.1. The district court found that application of the grouping rules did not adequately take into account the hate crime and vulnerable victims enhancements to Count One because Count One was disregarded without increasing the offense level for Counts Two, Three, and Four. The court thus made an upward adjustment of 5 levels.

The relevant sentencing range for a level 30 crime and Criminal History Category I was a term of imprisonment of 97-121 months. U.S.S.G. ch. 5, pt. A, sentencing tbl. The district court sentenced Smith to a term of imprisonment of 121 months, with 60 months allocated to Count One and 61 months allocated to Counts Two, Three, and Four. This was to be followed by three years of supervised release and included an assessment of $325.

Smith timely appealed the judgment of the district court.

## II.

After this Court took jurisdiction but before the parties' final briefs were filed, the Supreme Court handed down its decision in *United States v. Booker*, 125 S. Ct. 738 (2005). Smith did not raise *Booker* on appeal. Normally, then, this Court would consider the issue unreviewable. *See*

---

edition. Whatever the differences between the two editions—and a comparison of the relevant portions revealed none—the district court will have the opportunity to clarify the issue on remand.

Case 3:02-cr-00018   Document 64   Filed 11/28/05   Page 5 of 8 PageID #: 5

*Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998). However, "'this Court has discretion to correct plain errors affecting important rights of criminal defendants, even when not raised on appeal.'" *United States v. Pugh*, 405 F.3d 390, 402 (6th Cir. 2005) (quoting *United States v. Graham*, 275 F.3d 490, 521 (6th Cir. 2001)); *see* Fed. R. Crim. P. 52(b). Here, review of the *Booker* issue is appropriate because "the facts relevant to the . . . issue are fully set forth in the record, and the governing legal principles are clear." *Graham*, 275 F.3d at 522. Moreover, *Booker* itself declared that reviewing courts "must apply [*Booker*]'s holdings . . . to all cases on direct review."[3] *Booker*, 125 S. Ct. at 769.

Issues not raised or objected to below are reviewed for plain error. Fed. R. Crim. P. 52(b). Plain error review is permissive and requires an error that is both plain and affects substantial rights. *See United States v. Thomas*, 11 F.3d 620, 629-30 (6th Cir. 1993). Also, this Court "must . . . determine whether the forfeited error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings' before it may exercise its discretion to correct the error." *Johnson v. United States*, 520 U.S. 461, 469-70 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (alteration in original).

The Supreme Court held in *Booker* that "[a]ny fact (other than a prior conviction) which is

---

[3]This Court has consistently applied *Booker* even where the issue was never raised. *See, e.g., United States v. Harmon*, 409 F.3d 701, 703 (6th Cir. 2005) (finding plain error in light of *Booker*); *United States v. Milan*, 398 F.3d 445, 452 (6th Cir. 2005) (finding plain error and remanding for resentencing post-*Booker* where the *Booker* issue was otherwise forfeited). This case is slightly different, because Smith did not raise the issue in his briefs even though both were filed after *Booker* was decided. This difference, however, is immaterial in deciding whether to apply *Booker*. *See Booker*, 125 S. Ct. at 769 (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("'[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past[.]'") (first alteration in original)).

necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756. The district court enhanced Smith's sentence based on the court's own finding that Smith used or possessed a firearm in connection with another felony offense. This finding was based solely on facts adduced at the sentencing hearing and was neither admitted nor proved to a jury beyond a reasonable doubt.[4] The district court also adjusted Smith's sentence upward after applying the grouping rules to account for the court's vulnerable victims and hate crime findings. Neither of these findings was made in a manner consistent with the Sixth Amendment. In light of *Booker*, this was plain error.

Since nothing was proved to a jury beyond a reasonable doubt, the only factors upon which the district court could have properly sentenced Smith are those to which Smith pleaded guilty. The sentencing range based on Smith's guilty plea would have been 63-78 months,[5] which does not even

---

[4] Smith cites Application Note eighteen of section 2K2.1 in support of his argument that the Sentencing Guidelines precluded application of this enhancement to Smith's possession, manufacture, and transport counts. This is nothing more than a misreading of Application Note 18. It reads: "As used in subsections (b)(5) and (c)(1) 'another felony offense' and 'another offense' refer to offenses other than explosives or firearms possession or trafficking offenses." U.S.S.G. § 2K2.1 cmt. n.18. "Another felony offense," however, refers to the additional conduct giving rise to the enhancement; it does not refer to the underlying offense to which the enhancement is added. *See* U.S.S.G. § 2K2.1(b)(5), (c)(1). The district court included this enhancement based on its finding that Smith possessed destructive devices with knowledge, intent, or reason to believe that they would be used to injure another person. Thus, the other offense at issue was not Smith's *possession* of firearms but rather his (anticipated) *use* of firearms.

[5] The base offense level for Counts Two, Three, and Four is 18. *See* U.S.S.G. § 2K2.1(a)(5). Count Two charged Smith with possession of twenty-five destructive devices. (J.A. 13.) Possession of twenty-five to ninety-nine firearms warrants a 6-level increase. U.S.S.G. § 2K2.1(b)(1)(C). Possession of "destructive devices" warrants a 2-level increase. U.S.S.G. § 2K2.1(b)(3). This brings the adjusted offense level to 26. Criminal History Category I with an offense level of 26 carries an advisory term of imprisonment of 63-78 months. U.S.S.G. ch. 5, pt. A, sentencing tbl.

Case 3:02-cr-00018   Document 64   Filed 11/28/05   Page 7 of 8 PageID #: 7

take into account any downward adjustments for acceptance of responsibility or aid in prosecuting Spores. The sentencing range applied by the district court was 97-121 months. Therefore, the *Booker* violation unquestionably affects Smith's substantial rights. Finally, "a sentencing error seriously affects the fairness, integrity, or public reputation of judicial proceedings when [the] error results in imposition of a sentence which is not authorized by law." *United States v. Page*, 232 F.3d 536, 544 (6th Cir. 2000).

The district court committed plain error in sentencing Smith in violation of his Sixth Amendment rights as explained in *Booker*. *See United States v. Davidson*, 409 F.3d 304, 309 (6th Cir. 2005) ("[S]entences imposed on the basis of unconstitutional fact-finding satisfy the plain-error test."). Thus, we must vacate and remand to the district court for resentencing.

### III.

For the foregoing reasons, the sentence is **VACATED** and **REMANDED** to the district court for resentencing.

Case 3:02-cr-00018 Document 64 Filed 11/28/05 Page 8 of 8 PageID #: 8