1          IN THE UNITED STATES DISTRICT COURT

2       MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

3   _____

4   UNITED STATES OF AMERICA,      )

5                  Plaintiff,      )

6                                  )

7   v.                             )  CASE NO. 3:02-00008

8                                  )

9   MICHAEL EDWARD SMITH,          )

10                 Defendant.      )

11  _____

12

13               TRANSCRIPT OF PROCEEDINGS

14                  SENTENCING HEARING

15  _____

16  DATE:              May 1, 2006

17  TIME:              1:00 P.M.

18  BEFORE:            HONORABLE WILLIAM J. HAYNES, JR.

19  ------------------------------------------------------------

20

21

22  COURT REPORTER:    PEGGY G. TURNER
                       OFFICIAL COURT REPORTER
23                     801 BROADWAY, ROOM A-837
                       NASHVILLE, TENNESSEE 37203
24                     PHONE:  (615)726-4893
                       Peggy_Turner@tnmd.uscourts.gov
25

```
 1                      A P P E A R A N C E S:

 2     For the Plaintiff:  Ms. Debra Phillips
                           Asst. U. S. Attorney
 3                         Nashville, TN

 4     For the Defendant:  Mr. Sumter Camp
                           Asst. Federal Public Defender
 5                         Nashville, TN

 6                         Mr. David Baker
                           Attorney at Law
 7                         Nashville, TN

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 3:02-cr-00018   Document 85   Filed 06/27/06   Page 2 of 29 PageID #: 145

```
 1                          P R O C E E D I N G S
 2              THE CLERK:  We're here for a sentencing hearing in USA
 3      v. Michael Edward Smith.  Is counsel ready, please?
 4              MS. PHILLIPS:  Government present and ready.
 5              THE CLERK:  Defense counsel?
 6              MR. CAMP:  Defendant is present and ready, Your Honor
 7              THE COURT:  For clarity of the record, will counsel
 8      identify themselves by name.
 9              MS. PHILLIPS:  Debra Phillips for the government.
10              MR. CAMP:  Sumter Camp and David Baker for Mr. Smith,
11      Your Honor.
12              THE COURT:  I Know who you are, but for clarity of the
13      record.  Are there any preliminary matters before we get
14      started?  Either side?
15              MR. CAMP:  No, sir.
16              THE COURT:  If not, then from review of the Sixth
17      Circuit opinion, there appear to be some issues that the Court
18      needs to address.  In footnote two of the opinion, the Court
19      expressed uncertainty about whether the Court was applying the
20      2002 guideline range for the 2003 guideline range.
21              Frankly, it's unclear to me, but I don't have the --
22      the volume I had was the November 5, 2003 volume.  The
23      presentence report was prepared on March 8, 2004.  I'm sorry, it
24      originally was prepared on July, 2003 and then was amended on
25      March 8, 2004.  The sentencing was on March 17, 2004.  And the
```

Case 3:02-cr-00018   Document 85   Filed 06/27/06   Page 3 of 29 PageID #: 146

1    Court usually keeps the most current volume of the sentencing

2    guidelines at its bench.

3         So, at least from the Court's perspective, in reviewing

4    arguments, I think in all likelihood I had the November 5, 2003

5    version at the time of sentencing.

6         There were a number of enhancements that were made, and

7    I would have had what was on the bench at the time of sentencing

8    in March of 2004 in deciding those.  So, from the Court's

9    perspective, the Court is of the belief that had before it the

10   guidelines that were effective November 5, 2003.

11        Now, the Court would first adopt as the basis for

12   sentencing the statement of facts at the time of the guilty

13   plea, which are attached to docket entry number 48 at pages 22

14   through 31.  The Court notes particularly that at page 22, it

15   states that the defendant was, quote, observed pointing a rifle

16   from a vehicle in the direction of the Sherith Israel school,

17   end of quote, at page 22.

18        Unless there is some additional proof, the Court is

19   inclined to adopt and rely upon the transcript of the earlier

20   proof at sentencing.  Are there any exceptions or any additional

21   proof either side wants to put on?

22        MS. PHILLIPS:  Not for the government, Your Honor.

23        MR. CAMP:  Judge, we have two documentary items of

24   proof, but I think they could actually come in at a later point.

25        THE COURT:  No, sir, it's coming in now.  Whatever

4

1    proof you've got to submit, it comes in the record now.

2           MR. CAMP:  Yes, sir.  If I could have just a moment,

3    Your Honor.

4           Your Honor, I would tender to the Court and I have

5    provided copies to opposing counsel two documents marked

6    Defendant's Exhibits 1-A and 1-B.  1-A is a copy of a criminal

7    complaint in United States v. Ahmed Hassan Al-Uqaily, and 1-B is

8    a copy of the judgment in that same case, both from this

9    district and tendered by the defendant as related to --

10          THE COURT:  Do you have this, Ms. Phillip?

11          MS. PHILLIPS:  Yes, Your Honor.  And Your Honor, I

12   understand the Court can take a look at it for whatever value

13   the Court gives this, would be appropriate.  But I would note

14   for the record, we would object to this on relevance.  The items

15   that he is submitting have to do with a plea agreement that was

16   entered into by Al-Uqaily and defense counsel and the

17   government.

18          There was no plea agreement in this case.  There are

19   substantially different facts.  I understand the purpose of this

20   is to try to balance the two and make it look like one case is

21   similar to the other.  Mr. Al-Uqaily is being deported at the

22   conclusion of his sentence.  It's a much different case.  And it

23   would take days and days to delve into the specific facts.

24          And, therefore, I object to it on those grounds, but I

25   also understand that the Court can look at it for whatever value

                                                                    5

1    it deems it has.  But the government would submit that it has no

2    value in this proceeding.

3         MR. CAMP:  Your Honor, we're offering it to go to the

4    issue of parity or disparity, as the Court knows is one of the

5    matters that the Court must consider.  The complaint in

6    Al-Uqaily talks about how that defendant actively discussed

7    harming Jewish people and sought weapons to do just that, was in

8    the process of trying to buy hand grenades for that purpose.

9         The sentence imposed in that case was 57 months.  That

10   may have been a plea agreement, but a court in this district

11   accepted that.  At an appropriate time, we would distinguish it

12   from this case.

13        THE COURT:  Well, the Court will admit them for the

14   purposes of what the documents themselves reflect.  So

15   Defendant's Exhibits 1-A and 1-B will be admitted.  So I take it

16   now that the record is now closed as to factual matters?

17        MR. CAMP:  Yes, sir, as to the defendant.

18        MS. PHILLIPS:  Yes, sir.

19        THE COURT:  All right.  I would like to discuss this

20   issue of ex post facto that's raised in the defendant's

21   sentencing memorandum.  As I understand the defendant's

22   argument, they are arguing that the maximum sentence is the

23   maximum provided by law -- the maximum provided under the

24   guidelines at the time of the offense.  So have I accurately

25   stated the defendant's position.

MR. CAMP:  Yes, sir.

THE COURT:  All right.  So it seems to me, then, that the 2002 guidelines that were the basis for the presentence report in this case, as noted by the Sixth Circuit, would be the appropriate guideline to be used in this case, and, therefore, would be the basis for at least the Court's initial determination -- or for use in the Court determining the appropriate guidelines.  The Court, of course, is not bound by what the probation office has found, and will make appropriate decisions as to where it does and does not.

Now, having said that, it appears to me that sentencing enhancements were part of the law and part of the guideline law at the time of the underlying offense.  So it doesn't seem to the Court that to impose the sentencing enhancement in this case is in any way an ex post facto violation of the law. But if I'm in error in that regard, I will be pleased to hear from you.

MR. CAMP:  May it please the Court, that is a somewhat unique legal position created by the United States Supreme Court's decision in United States v. Booker.  Backing up, before we get to that particular case, the Supreme Court has noted that the ex post facto clause, or principles of ex post facto, apply to judicial decision-making through the due process clause. This was established in Bowie v. City of Columbia, the court citing principles going back to Caulder in 1798 and setting

7

Case 3:02-cr-00018   Document 85   Filed 06/27/06   Page 7 of 29 PageID #: 150

1    forth the standard in which the Supreme Court has recently
2    established in Rodgers v. Tennessee.
3         THE COURT:  Let me be clear.  When I referred to the
4    2002 guidelines, to avoid any issue of ipso facto, or ex post
5    facto violation, I am treating the 2002 guidelines as consistent
6    with Booker, meaning that they are advisory only.  I am not
7    adopting the state of the law at the time that they were
8    mandated.
9         MR. CAMP:  Yes, sir.  I think the Supreme Court's case
10   law also shows us that, again, going back to Caulder v. Bouldlt,
11   that an increase in punishment applied retrospectively violates
12   ex post facto principles within this same due process right.
13        THE COURT:  I understand those general principles,
14   Mr. Camp, but in applying the 2002 guidelines, the probation
15   office found the guideline range to be 121 months to 151 months.
16   If that's the case, then how is it that there is any contention
17   that it is an ex post facto violation by increased punishment?
18        MR. CAMP:  Because, one, the Court found some of those
19   determinations to be wrong.  Secondly, those determinations were
20   only made, probation was suggesting --
21        THE COURT:  I don't know that -- which particular ones
22   did I find in error?  I think they were one of two.
23        MR. CAMP:  The Court rejected the suggestion that there
24   should be a cross reference to assault with intent to commit
25   murder.  The Court, on the other hand, did find the four level

8

upward adjustment in 2k2.1b5, and added that adjustment.

    THE COURT:  Now, my memory is that we came out at the same point, although we may have arrived at it through different calculations.

    MR. CAMP:  I think it was close, certainly, yes, Your Honor.

    THE COURT:  Well, however -- well, go ahead, Mr. Camp.

    MR. CAMP:  Judge, I don't mean to bore the Court with law that I know the Court understands, but I --

    THE COURT:  You are not boring me.  I'm just trying to figure out if the guideline calculations, applying the 2002 guidelines, provide for a sentence of 121 months, then how could the sentence that the government is advocating now of 121 months present a situation that there is an increase in punishment in violation of the ex post facto law?

    MR. CAMP:  Because what Blakely and Justice Stevens' part of the Booker opinion tell us is that the maximum sentence for constitutional purposes is that sentence based on either jury finding or facts admitted during the plea colloquy by a defendant.  And no other.

    THE COURT:  Well, the Court sentence in this case was based upon facts admitted by the defendant as part of the plea colloquy.  That's the reason I made this particular observation with respect to page 22, because there was a reference that somehow he wasn't intending to hurt anybody.  And this argument

9

1   did appear to the Court to be marginally supported by the facts,
2   this white car theory for his action.
3       MR. CAMP:  Judge, I think where this comes into play is
4   that Mr. Smith has never admitted intending to take any action
5   against anyone inside of that school.
6       THE COURT:  I'm sorry, Mr. Camp.  You argued that the
7   last time.  I didn't believe it last time; I don't believe it
8   now.
9       MR. CAMP:  Your Honor doesn't believe it.  So the Court
10  is engaging in fact-finding, which Blakely and --
11      THE COURT:  Based upon page 22, the defendant was,
12  quote, observed pointing a rifle from a vehicle in the direction
13  of the Sherith Israel school, end of quote.  That is a fact that
14  he admitted to, that he did not question the accuracy of, and he
15  admitted was accurate.
16      MR. CAMP:  It was out the window in the direction
17  towards which was that building.  That's what this says.
18      THE COURT:  No, sir. It's pointing a rifle from the
19  vehicle.  That was a fact admitted as part of the plea colloquy.
20      MR. CAMP:  Yes, sir.  And as Mr. Smith has explained to
21  the Court, and as the defendant has stated, there was no intent
22  to harm anyone at the school.  It was not pointed --
23      THE COURT:  First of all, he didn't testify at
24  sentencing.
25      MR. CAMP:  Mr. Smith filed a statement which was made a

10

1    part of the record.

2         THE COURT:  Does that establish it as evidence?

3         MR. CAMP:  I believe it does.  It has been accepted by

4    the Court as his statement.  Hearsay is admissible in a

5    sentencing hearing, as was put in through the government's

6    proof.  Hearsay, double and triple hearsay.

7         Beyond that, Your Honor, I don't think even this mere

8    fact establishes that there was -- would support the four level

9    enhancement under 2k2.1b5, which enhancement was argued by the

10   government and probation to be applied against counts two, three

11   and four, not against count one.  And this fact is relevant as

12   to count one.  Any fact beyond what Mr. Smith admitted to or was

13   proven to a jury, which we didn't have, cannot be used under

14   Blakely, and Justice Stevens' opinion in Booker, to enhance his

15   sentence.

16        THE COURT:  But under Booker, and under the Sixth

17   Circuit precedent after Booker, I still have to consider, for

18   the purposes of advisory guidelines, whatever evidence is put

19   before the Court to determine that guideline.

20        Now, that is the Court's understanding of the law.

21   Booker only made a change with respect to the mandatory aspects

22   of it, and Justice Stevens' opinion that you are pointing to

23   reflected the mandatory features of the then-existing

24   guidelines.  Those don't exist anymore.

25        I am now back to making an advisory determination, and

11

1    I still have to go through the calculus and the proof that I

2    would consider before Booker on what the guideline sentence

3    would be.

4         Now, whether that -- I mean, the difference is that

5    they are now advisory.  But I, nonetheless, have to consider the

6    proof and make determinations under the guidelines like I did

7    before Booker. If I don't, then the sentence gets reversed

8    because I didn't apply -- didn't make the appropriate guideline

9    determinations.

10        MR. CAMP:  And I believe that the Court can do just

11   that, subject to the Supreme Court's constitutional law and due

12   process, which limits the extent upward to which the Court can

13   go.  And I suggest to the Court that that --

14        THE COURT:  Well, if I can't go upward, then it seems

15   to me that you are basically eliminating the enhancement

16   provisions for the guidelines.

17        MR. CAMP:  I think as to those defendants whose

18   sentence fell within those guidelines, I think if Mr. Smith's

19   actions fell within Booker, we wouldn't be having this

20   discussion.

21        THE COURT:  No, I think we would still be having the

22   discussion.

23        MR. CAMP:  The fact in this case, Judge, is that the

24   Blakely decision told us that the maximum applicable sentence in

25   this case is 57 months.  When the remedial Booker decision comes

                                                              12

1    down --

2         THE COURT:  That assumes that the enhancement was not

3    based upon facts admitted as part of the plea.

4         MR. CAMP:  Yes, sir, that is our position.

5         THE COURT:  If the enhancements were made based upon

6    the facts that were admitted at the plea, there would be no

7    issue.

8         MR. CAMP:  Well, I don't agree with the Court on that.

9         THE COURT:  But that's my understanding of the law.

10   Unless admitted to by the defendant or found by the jury.  So if

11   you consider facts that were admitted by the defendant, and

12   those facts are the basis for the enhancement, the application

13   of the enhancement don't pose any Booker problems, because he

14   has admitted those facts.

15        MR. CAMP:  Well, we still don't go over 57 months, Your

16   Honor.

17        THE COURT:  What you're saying is that the enhancement

18   can't be applied.  If the enhancement can't be applied, I can't

19   apply the guidelines.  If I can't apply the guidelines, then

20   what you are telling me is I can't do what the Sixth Circuit has

21   said I have to do, and that is, apply the guidelines.

22        MR. CAMP:  What the Court must do in any sentencing

23   case is always subject to the law, both statutory and the

24   Supreme Court.  In this case, the due process places certain

25   limitations, I suggest to the Court, on what can be done here.

13

1    And this is caused by this, in my experience, solely

2    unique decision in which one faction of the Supreme Court writes

3    part of the opinion, and the dissenters to that part of the

4    opinion write the remedial part of the decision.  I don't know

5    of another case where that has happened.  That's part of the

6    problem here.

7         THE COURT:  That may be part of the problem, but the

8    Sixth Circuit has resolved that issue.  They have told us

9    exactly what we have to do.  We have to make a determination

10   under the guidelines, and if we don't make a determination under

11   the guidelines, then the judgment that we entered is going to be

12   reversed.

13        So I have got to apply the guidelines.  And if I do

14   apply the guidelines, I think I have to apply all of the

15   applicable guidelines.  And what you seem to be saying to me is

16   that, under Booker, I can only apply the first set of guidelines

17   for the base level offense, and I have to ignore enhancement,

18   and I don't think that's what the Sixth Circuit has said.

19        MR. CAMP:  What I'm telling the Court, the defendant's

20   position is that any enhancements not based on facts at the time

21   of the plea cannot be imposed.  That if they are facts within

22   the statement of facts that the defendant has admitted to beyond

23   a reasonable doubt, those can certainly be used consistent with

24   the Court's opinion.

25        But that beyond that, this Court cannot go, without

14

violating due process principles of ex post facto, by increasing

Mr. Smith's sentence in an unconstitutional manner, in a manner

that could not have been done under Blakely.

Blakely says that 57 months is the highest.  Then to go

beyond that, to --

THE COURT:  The Supreme Court made it clear in Blakely,

did they not, that it was expressing no opinion with respect to

the United States sentencing guidelines.  Blakely was a state

case.

MR. CAMP:  Yes, sir, that's true.

THE COURT:  So the only case that is controlling here

is Booker.

MR. CAMP:  The clear principle in Blakely was that the

maximum sentence for --

THE COURT:  Whatever the clear principle was, the

Supreme Court made it clear it wasn't applying it to the

sentencing guidelines until it actually decided the case.

MR. CAMP:  And that principle was adopted in Justice

Stevens' decision in Booker, part of the opinion.

THE COURT:  Well, that may not be true in Booker --

well, never mind.  Go ahead, Mr. Camp.

MR. CAMP:  The Supreme Court has noted in Griffith v.

Kentucky that the defendant is to receive the benefit of new

rule of law, which in this case would have been Blakely and

Booker, which were released while Mr. Smith's appeal was

15

1    pending, his direct appeal.

2           I suggest to the Court that Mr. Smith is entitled to

3    the benefit of both Blakely and Booker constitutional rulings as

4    well as the Court's due process case law on ex post facto.  A

5    similar example can be found in Marx v. United States in which

6    the Court said any constitutional principle enunciated in Miller

7    which would seek to benefit petitioners must be applied in their

8    case.

9           This situation is the same, and it's unique because of

10   the timing in which Mr. Smith's case came up.  But I submit to

11   the Court, as I noted earlier, that any factor beyond what was

12   admitted at the time of the plea cannot be used to increase his

13   sentence.

14          The Court is certainly free to impose whatever sentence

15   the Court feels appropriate within those constitutional

16   guidelines, both of the --

17          THE COURT:  But in your argument, then, the guidelines

18   become mandatory.

19          MR. CAMP:  I'm saying, Your Honor, for an individual

20   whose case was pending at the time Blakely was decided, and the

21   Booker, Justice Stevens' Booker decision adopting Blakely

22   rationale which says the maximum sentence for the law is the

23   high end of the guidelines, that that is the maximum sentence

24   that can be imposed.

25          THE COURT:  Okay.  But I can't even consider -- that's

                                                                    16

```
 1   the only sentence I can impose, under your theory?

 2         MR. CAMP:  No, sir.  That's the highest sentence you

 3   can impose.

 4         THE COURT:  It's the highest.  So at that point I have

 5   to ignore the other part of the guidelines, don't I?

 6         MR. CAMP:  The Supreme Court's -- my position is --

 7         THE COURT:  Yes or no?

 8         MR. CAMP:  The Supreme Court's case law on due process

 9   mandates that.

10         THE COURT:  A yes or no would help me.  A yes or no

11   would help.  Are you saying to me that, under your

12   interpretation of Booker, that I can only impose a sentence

13   determined under the guidelines without reference to any other

14   -- without reference to any enhancement?  Is that your position?

15   Yes or no?

16         MR. CAMP:  No, sir, not without relation to any

17   enhancements.

18         THE COURT:  But you just told me that the maximum -- I

19   can't rely upon any fact that wasn't admitted as part of the

20   plea.  Is that what I understood you to say?

21         MR. CAMP:  Yes, sir.

22         THE COURT:  And that under the facts of the plea, the

23   maximum sentence under the guidelines before the enhancement was

24   57 months.

25         MR. CAMP:  I believe that sentence includes certain
```

1    enhancements that were a part of the facts admitted at the time

2    of the plea.  And I have set that calculation out in the

3    position paper I filed with the Court.  To go beyond that, for

4    example, to the four level increase under 2k2.1b5, that was not

5    a part of any of the facts admitted at the plea, and could not

6    be imposed.

7              THE COURT:  For the government?

8              MS. PHILLIPS:  Your Honor, across the country, upon

9    resentencing from Booker, there have been consistently sentences

10   imposed that have applied all of the enhancements that the Court

11   would find relevant.  The reason for that has been, and that's

12   occurred -- in the 10th Circuit there has been a law review

13   article written, and actually, it was -- I'm sorry, an article

14   written.  It was entitled, The Booker Mess, by Michael W.

15   McConnell.  And it points out that 46 percent of all of the

16   cases remanded for Booker, there was no change in the final

17   sentence, while four percent they gave increased sentences.  And

18   that was in the 10th Circuit.

19             The reason that they were able to reapply the exact

20   same sentence is because, when the guidelines were mandatory,

21   pre-Booker, it's the whole mandatory nature of it.

22             And Justice Stevens, in his opinion, at 123 Supreme

23   Court at 750, has said, and he was referring to the guidelines

24   pre-Booker:

25             The guidelines as currently written, could be read as

18

merely advisory provisions that recommended rather than required the selection of particular sentences in response to differing sets of facts.  Their use would not implicate the sixth amendment.  We have never doubted the authority of the judge to exercise broad discretion in imposing a sentence within a statutory range.  Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had admitted from the Sentencing Reform Act the provisions that made the guidelines holding binding on district judges.  It is that circumstance that makes the Court's answer to the second question presented possible.  For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.  That allows the Court to apply any of the guideline factors that it finds under the guideline analysis, beyond a reasonable doubt or by a preponderance of the evidence.

And Justice Stevens, himself, said that.

MR. CAMP:  Judge, if I might briefly.  Justice Stevens goes on to say, however:

The guidelines as written, however, are not advisory; they are mandatory and binding on all judges.

It is that binding nature that the Court told us in Blakely sets the maximum sentence at whatever the high end of the range is.  In Mr. Smith's case, that was 57 months.  When

the Supreme Court in the Breyer part, the remedial part, of the Booker opinion, changed the nature of the guidelines from mandatory to advisory, they effectively increased the maximum sentence for Mr. Smith from 57 months to whatever it could be today, with advisory guidelines.

It is that judicial increase in the maximum sentence that we object to, and we say is the violation of due process. I'm not telling the Court that the Court cannot use the guidelines to impose the sentence. Certainly the Court can and should. What I do suggest is the Court cannot use the guidelines to the defendant's detriment in violation of his constitutional rights.

MS. PHILLIPS: Your Honor, the only thing that I would add is that this, again, -- and this is set forth in our position paper -- that nothing about Booker has increased the statutory range. All of the cases cited by the defense deal with increase in statutory range or making a substantive charge, giving it a penalty that it didn't have before.

Taking away the mandatory nature of the guidelines does nothing but allow the Court to do a calculation of the guidelines and make it advisory. And that applies to 3553(a) factors and sentence within the maximum statutory range and sentence within the maximum statutory range. The statutory range has not changed; the maximum is what it was before, and, therefore, there is no ex post facto problem, and there is no

Case 3:02-cr-00018   Document 85   Filed 06/27/06   Page 20 of 29 PageID #: 163

due process problem.

MR. CAMP:  But the statutory maximum, Your Honor, is exactly what is not the maximum.  That's what the holding in Blakely and Booker was about.  And in fact, if we look at the Supreme Court's law, Miller v. Florida told us that an increase in the guidelines, even by a matter of months, can be an ex post facto violation.  In that case they were dealing with Florida state guidelines.

That principle, however, was later adopted into the U.S. Sentencing Guidelines manual into what has come to be known as the one book rule, to say we use the book currently in date unless there is an ex post facto problem.  In that decision the Court was talking about sentencing issues and that impact.

Both Blakely and Booker have told us that the guideline range sets the maximum, regardless of the statutory maximum. There is a statutory maximum that's higher in Blakely than the sentence he could have received, but the Supreme Court found that was not the appropriate measure for purposes of the sixth amendment, nor is it here.

THE COURT:  We'll be in recess for a few minutes.

(Recess.)

THE COURT:  Ms. Phillips, I had some questions I wanted to ask you.  There were some differences in the calculation of the guidelines by the government, probation office, nd the ultimate findings of the Court.  Out of an abundance of caution,

21

1    are there any inconsistencies between what the Court earlier

2    found at the March 2004 sentencing and the government's proposed

3    findings of fact in its docket entry 74?

4         MS. PHILLIPS:  I don't believe there are any

5    inconsistencies in that, Your Honor.

6         THE COURT:  I didn't discern any, because the assault

7    with intent to commit murder didn't appear to be part of the

8    enhancement in this.

9         MS. PHILLIPS:  That's correct.

10        THE COURT:  And I think that's really the only

11   difference we had.

12        MS. PHILLIPS:  Right.  I took the Court's findings

13   regarding the guidelines and put it into this.

14        THE COURT:  Okay.  We'll be in recess.

15        (Recess.)

16        THE COURT:  Are there any other matters, either side?

17   The Court is going to first, as I stated earlier, adopt as

18   factual findings in this matter the statements made at the time

19   of the plea.  The Court is also going to adopt the calculations

20   that were made at the sentencing hearing and findings that were

21   made at the sentencing hearings as reflected on docket entry

22   number 59, page 87 through page 98; on page 127.

23        Second, the Court will incorporate and adopt the

24   government's proposed findings of fact set forth in docket entry

25   number 74.  The Court also adopts the government's conclusions

                                                                  22

1    of law and the calculation of the guideline ranges that are

2    applicable to this case. And, therefore, finds that the

3    criminal history category is I, the offense level is 30, and the

4    guideline range is 98 to 121 months. And at this time, the

5    Court will allow the defendant to address the Court, and at that

6    point, I will make a decision concerning the Section 3553(a)

7    factors.

8        MR. CAMP: May it please the Court, Mr. Smith does not

9    wish to have any allocution.

10       THE COURT: All right. Mr. Smith, you have heard the

11   statement of your counsel that you do not wish to address the

12   Court. You understand you have the right to address the Court,

13   but you have elected not to do so. Is that right, Mr. Smith?

14       THE DEFENDANT: Yes, sir.

15       THE COURT: Is that what you want to do?

16       THE DEFENDANT: Yes, sir.

17       THE COURT: All right. Based upon the absence of any

18   proof to the contrary since the last hearing, the Court is going

19   to adopt its earlier findings as well as the findings set forth

20   in the government's proposed findings of fact under Section 1353

21   that are set forth on pages seven through 13.

22       The Court, in summary, has considered the fact that the

23   defendant had an extensive amount of firearms, that on the day

24   of the offense that he was fully armed, that he had pointed the

25   gun at the school, that the selection of the school was based on

23

his personal beliefs, that the children at this school were particularly young children who were in no position to appreciate any danger that they faced. The defendant has a history of antisemitic feelings, has expressed his interest in killing people.

There has not been any proof offered to change any of the factual predicates for the Court's sentence in this case. There has been no analysis or showing of a factual similarity between the Al-Uqaily case reflected in Government's Exhibit Numbers 1-A and 1-B beyond the sentence in that case was obviously based upon the presentence report and information. Whatever that was available is not before this Court, so the Court is not really able to make an assessment as to what may have motivated the decision of the Court in that case.

Are you ready for the Court to impose sentence in this case, Mr. Smith?

THE DEFENDANT: (Defendant stands.) (Respite.)

THE COURT: Are you ready for the Court to impose sentence, Mr. Smith?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. The Court imposes a sentence on count one of 60 months; on count two, 61 months; on count three, 61 months; on count four, 61 months. The Court orders that counts two, three and four be served concurrently. By law, the sentence on count one and count two must be consecutive, for a

24

total sentence of 121 months.

The Court places you on supervised release for a period of three years on count two that would embrace the one year on count one and would be concurrent with three years on counts three and four. The Court will not impose a fine because you lack the ability to pay a fine. The Court imposes a special assessment of $400.

Special conditions of your pretrial release are that you must participate in a mental health program as directed by health officials in the Bureau of Prisons. The Court will strongly recommend that you be given access to the most intensive health treatment program available within the Bureau of Prisons.

You are prohibited from having any association or contact with the Sherith Israel School. You are to avoid all contact with the following groups: The Ku Klux Klan, the National Alliance or the Aryan Nation.

You are prohibited from owning, carrying, or possessing a firearm, destructive device or any other dangerous weapon. The Court has placed you on the maximum period of supervised release because the Court believes that, given the nature of this offense, given the references to your emotional history, that it is for the protection of yourself and others.

If you wish to appeal this sentence, you have ten days from today in which to do so. You will receive credit on this

25

1    sentence for all prior time that you have already spent in

2    custody.

3            Are there any other matters?

4            MS. PHILLIPS:  No, Your Honor.  I just want to be

5    clear, and I think you said it, but just for the record, the

6    advisory guideline provisions that you have applied -- are they

7    the same as set forth in the government's position?

8            THE COURT:  Yes.  I adopted the government's

9    calculation of the guideline calculations.

10           MS. PHILLIPS:  Thank you.

11           THE COURT:  Thank you.  Which I understand are wholly

12   consistent with the Court's earlier calculation of the

13   guidelines.

14           MS. PHILLIPS:  I believe so.

15           MR. CAMP:  Your Honor, pursuant to United States v.

16   Bostick, I understand that the Court of Appeals directs me to

17   restate for the record any objections that we may have had,

18   despite the Court's ruling on those objections.

19           So, pursuant to that decision, I would note that we

20   object to any sentence above 57 months as violative of due

21   process and ex post facto, as we earlier discussed in this

22   hearing.

23           We object to the guideline calculations proposed by the

24   government and adopted by the Court.  The defendant filed a

25   defendant's resentencing position paper at document 72-1,

1  setting forth what the defendant believed were the correct
2  sentencing guideline calculations, which would have resulted in
3  a total offense level of 23 before the reduction for the two
4  level downward departure.
5       Implicit in that is an objection to and rejection of
6  the government's calculation of the guidelines.
7       Defendant objects to the factual findings and
8  conclusions of law submitted by the government for the reasons
9  stated in defendant's submission of document 77-1 in the record,
10  defendant's objections to government's proposed findings of fact
11  and law, as not being supported by the record in this case.
12       If I could have just a moment, Your Honor.
13       That's all, Your Honor.  Thank you.
14       THE COURT:  I just want the record to be clear that
15  with defense counsel's statements that I have adopted the
16  findings, as I said earlier, what those findings are, are the
17  findings that the Court made at the time of the original
18  sentence, which I think are consistent with the guidelines
19  applicable to this case, that the guidelines have been treated
20  as advisory only, and because of that, the Court does not feel
21  that any of the ex post facto contentions or violations that
22  defense counsel asserts should be present here.
23       Are there any other matters?
24       MS. PHILLIPS:  No, sir.
25       THE COURT:  We'll be in recess, after which we will

27

1     take up the next case.

2                              * * * * *

REPORTER'S CERTIFICATE

I, Peggy G. Turner, Official Court Reporter for the United States District Court for the Middle District of Tennessee, with offices at Nashville, do hereby certify:

That I reported on the Stenograph machine the proceedings held in open court on May 1, in the matter of USA v. SMITH, Case No. 3:02-00018; that said proceedings in connection with the hearing were reduced to typewritten form by me; and that the foregoing transcript, pages 1 through 29, is a true and accurate record of said proceedings.

This the 26th day of June, 2006.

_____

S/Peggy G. Turner, RPR

Official Court Reporter